SUNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON YOUNGS #229558,

    Plaintiff,                               Hon. Hala Y. Jarbou

v.

                                                 Case No. 1:23-cv-473

PAULA BECK, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before me on Michigan Department of Corrections (MDOC) Defendants Allenbaugh's and Wease's Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 22.) The motion is fully briefed and ready for decision.[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **DENIED**.

### I. Background

Plaintiff is a state prisoner currently incarcerated with the MDOC at the Richard A. Handlon Correctional Facility. The events of which he complains occurred at the Carson City Correctional Facility (DRF). Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983 on May 8, 2023, against MDOC employees April Allenbaugh, R.N., and Nursing Supervisor Kimberly Wease, and MDOC contractor Paula Beck, N.P., alleging that they were deliberately indifferent to his medical need for a "sun hat" in violation of the Eighth Amendment.

---

[1] Plaintiff filed a response (ECF No. 27), but Defendants Allenbaugh and Wease did not file a timely reply.

1

Plaintiff alleges that on May 26, 2016, while incarcerated at the Michigan Reformatory, he had a biopsy on the back of his neck indicating basal cell carcinoma, and that all of the skin cancer was removed. In June 2016, he was placed on "chronic care" status due to his skin cancer diagnosis. In May 2018, Dr. Holmes issued Plaintiff a medical detail for a "wide brimmed hat," or "sun hat," to prevent further development of skin cancer. Plaintiff alleges that the detail did not have an expiration date. (ECF No. 1 at PageID.3.)

In April 2022, while incarcerated at DRF, Plaintiff lost his sun hat due to COVID-19 moves within the facility. Plaintiff alleges that he sent requests for a replacement sun hat to DRF's Health Services Department on or about April 12, 2022, May 16, 2022, June 21, 2022, and June 23, 2022, but he did not receive a replacement hat until July 20, 2022. (*Id.* at PageID.3–5.) Plaintiff alleges that he received responses to these requests indicating that the issue was being reviewed. On or about June 25, 2022, Defendant Wease issued a response to Plaintiff's June 23, 2022 request indicating that Plaintiff did not have a current accommodation for the hat because the accommodation had to be renewed every year. The following day, non-Defendant Stephanie Weust (or Wuest), M.D., reviewed Plaintiff's chart and approved a replacement sun hat for Plaintiff. (*Id.* at PageID.4.) Plaintiff alleges that in July 2022, Dr. Weust examined him and found additional lesions on his left shoulder and head. Dr. Weust removed the lesion and diagnosed it as skin cancer. Dr. Weust subsequently performed a biopsy on the lesion on Plaintiff's head. The sample was sent to the lab and was found to be advanced actinic keratosis, a pre-curser to skin cancer caused by exposure to sunlight. (*Id.* at PageID.5–6.) Plaintiff alleges that the delay in receiving the sun hat resulted in unnecessary exposure to the sun that caused him to develop pre-cancer and skin cancer. (*Id.* at PageID.7.)

Plaintiff alleges that he filed a Step I grievance on June 28, 2022, against DRF's Health Services Department alleging deliberate indifference to his serious medical need by denying him a replacement for his prescribed sun hat. The grievance was assigned identifier DRF-2022-07-1388-12e. (*Id.* at PageID.4.) Defendant Wease interviewed Plaintiff and issued a response on July 15, 2022, stating that the issue had been partially resolved because Plaintiff's request for a sun hat had been approved and was scheduled for pick up, but Plaintiff had yet to be seen about suspicious lesions on the top of his head. (ECF No. 27-4.) Plaintiff filed a Step II appeal on July 26, 2022, due to Defendant Wease's failure to address his complaint of deliberate indifference to his serious medical need. (ECF No. 1 at PageID.5.) Plaintiff filed a Step III grievance using the same identifier on August 17, 2022, after he failed to receive a timely Step II response. On or about September 9, 2022, Plaintiff received a late Step II response from Michael Gilbert, R.N., stating that an extension had been requested and granted for the Step II response. The response did not state when the extension was granted, and Plaintiff never received notification of the extension as required by MDOC policy. The response stated that the grievance was resolved and that no further remedy could be offered. (*Id.* at PageID.6.) On January 9, 2023, Plaintiff received a response to his Step III appeal bearing a grievance identifier that had been changed from DRF-2022-07-1388-12e to DRF-22-07-1388-28e. The Step III response stated that the rejection was upheld and that the decision could not be appealed within the MDOC. (*Id.* at PageID.7.)

The MDOC Defendants move for summary judgment on the basis that Plaintiff failed properly to exhaust his claims before filing this action. In support of their motion, Defendants submit Plaintiff's Step III Grievance Report showing that he pursued one grievance through Step

3

III in 2022 arising out of DRF, DRF-22-07-1388-28e.[2] (ECF No. 23-3.) Defendants also submit an affidavit from Richard Russell, the Manager of the Grievance Section in the Office of Legal Affairs of the MDOC, in support of their motion. (ECF No. 23-4.)

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so

---

[2] It appears that at some point after Plaintiff filed his Step III grievance, MDOC officials changed the grievance identifier from DRF-2022-07-1388-12e to DRF-2022-07-1388-28e. This fact does not alter the analysis of the motion.

powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III. Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive

5

03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

Defendants rely principally upon the Russell affidavit in support of their motion. In his affidavit, Russell states that Plaintiff's Step I grievance was "rejected because it was untimely received at both Steps I and III." (ECF No. 23-4 at PageID.99.) Regarding the Step I filing, Russell contends that May 23, 2022 was the deadline for Plaintiff's Step I grievance. He posits that because Plaintiff did not receive a sun hat after his April 19, 2022 request,[3] Plaintiff's May 16, 2022 kite constituted an attempt to resolve his claim under the MDOC's grievance policy, making May 23, 2022 the Step I deadline. (*Id.* at PageID.99–100.) Russell further asserts that the Step III appeal was rejected because, when Plaintiff did not receive a response to his Step II appeal by the August 17, 2022 deadline, he was required to file an appeal to Step III within ten business days (August

---

[3] Russell inaccurately refers to Plaintiff's "April 19, 2022, request." (*Id.* at PageID.99.) Plaintiff alleges that he sent his first request on April 12, 2022, and received a response on April 19, 2022. (ECF No. 1 at PageID.3.)

6

31, 2022), but he did not file his Step III appeal until September 23, 2022. Thus, he asserts, the Step III appeal was untimely and therefore rejected. (*Id.* at PageID.100.)

In light of the evidentiary record in this case, Russell's after-the-fact *ipse dixit*—which is really Defendants' legal argument masquerading as an assertion of fact—is meritless, and perhaps even frivolous. In his response to Defendants' motion, Plaintiff provides the actual Step I response, which shows that the grievance was not rejected at Step I, but was considered on the merits. (ECF No. 27-4.) In fact, the response states that the issue had been "partially resolved." (*Id.*) There is no evidence that the grievance coordinator considered the Step I grievance untimely or rejected the grievance for any reason. Given that the issue was ongoing, *i.e.*, Health Care's delay in performing a chart review delayed Plaintiff's receipt of his hat, the grievance coordinator had a sound basis for determining that Plaintiff's June 28, 2022 grievance remained a live issue and was timely. *See Ketzner v. Douglas*, No. 08-CV-13299, 2009 WL 1655004, at *12–13 (E.D. Mich. June 11, 2009) (concluding that the plaintiff's grievance regarding the defendant's failure to refill the plaintiff's prescription was an ongoing issue that rendered the grievance timely, as the issue remained unaddressed and prison officials still had the power to address the grievance). Second, Russell's assertion that Plaintiff's Step III appeal was rejected is also unfounded. The Step III response itself does not indicate that the Step III appeal was rejected as untimely. In fact, it states the opposite: "Your Step III appeal has been reviewed and considered . . . ." (ECF No. 23-3 at PageID.91.) While the response states that it upheld a rejection, as shown above, no such rejection had occurred because the grievance was considered on the merits at both Steps I and II.[4] Accordingly, Defendants' motion should be denied.

---

[4] Although Defendants' motion fails for the foregoing reasons, Russell also ignores the fact that the Step II response that Plaintiff received on September 9, 2022, indicated that an extension had been requested and granted for the response to Plaintiff's Step II appeal. Therefore, under the

## IV.  CONCLUSION

For the foregoing reasons, I recommend that the Court **DENY** Defendants' motion for summary judgment based on Plaintiffs' failure to exhaust their administrative remedies. (ECF No. 22.)

Dated: October 17, 2023                                                    /s/ Sally J. Berens
                                                                                              SALLY J. BERENS
                                                                                              U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

MDOC's grievance procedure, Plaintiff was not required to file a Step III appeal until he received the response in accordance with the extension on September 9, 2022. Mich. Dep't of Corr. Policy Directive 03.02.130 ¶¶ T, HH. Moreover, the response stated that the grievance had been "resolved" and that "[n]o further remedy [could] be offered." Given this outcome, Plaintiff was not even required to file a Step III appeal unless he was dissatisfied with the outcome. *See Hoffman v. Gdowski*, No. 19-13691, 2022 WL 4230914, at *7 (E.D. Mich. July 11, 2022), *report and recommendation adopted*, 2022 WL 3756193 (E.D. Mich. Aug. 30, 2022) ("MDOC policy does not provide for a prisoner's formal grievance of a resolved issue. It would be nonsensical to require a prisoner to pursue appeals of a grievance he agrees was earlier resolved. Hoffman exhausted his administrative remedies by filing a grievance at Step I that was resolved.").