UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON YOUNGS #229558,

    Plaintiff,                                           Hon. Hala Y. Jarbou

v.                                                     Case No. 1:23-cv-473

PAULA BECK, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

       This is a prisoner civil rights action pursuant to 42 U.S.C. § 1983 by a prisoner confined with the Michigan Department of Corrections (MDOC). Plaintiff alleges that Defendants violated his rights under the Eighth Amendment through their deliberate indifference to his medical need for a wide-brimmed hat for protection from the sun. Presently before me are Defendant Paula Beck, N.P.'s Motion for Summary Judgment and MDOC Defendants Wease and Allenbaugh's Motion for Summary Judgment. (ECF Nos. 42 and 43.) Plaintiff has failed to respond to the motions within the time permitted by Western District of Michigan Local Civil Rule 7.2(c). Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that both motions be **GRANTED**, and that Plaintiff's complaint be dismissed with prejudice.

**I.   Background**

       Plaintiff is currently incarcerated with the MDOC at the Richard A. Handlon Correctional Facility. The events of which he complains occurred at the Carson City Correctional Facility.

On May 26, 2016, while incarcerated at the Michigan Reformatory, Plaintiff had a biopsy on the back of his neck indicating basal cell carcinoma. At that time, all of the skin cancer was removed. In June 2016, he was placed on "chronic care" status due to his skin cancer diagnosis. In May 2018, Plaintiff received a medical detail for a "wide brimmed hat," or sun hat, to prevent further development of skin cancer. Although Plaintiff alleges that the detail did not have an expiration date (ECF No. 1 at PageID.3), as of January 2022, Plaintiff did not have a medical accommodation for a wide-brimmed hat. (ECF No. 42-1 at PageID.209.)

On February 21, 2022, N.P. Beck saw Plaintiff for a chronic care visit. His skin cancer diagnosis was not discussed during the visit. At the time, Plaintiff still had his wide-brimmed hat. He subsequently lost it, however, after he was placed in COVID-19 quarantine. (*Id.* at PageID.210–16; ECF No. 42-3 at PageID.296.) On April 12, 2022, Plaintiff submitted a medical kite requesting sunscreen and a replacement sunhat, which he had lost. On April 19, 2022, Plaintiff was advised that a chart review would be sent to the medical provider. (ECF No. 42-1 at PageID.17.) On April 20, 2022, N.P. Beck performed a chart review relating to Plaintiff's request for a sun hat. She noted that sunscreen was available OTC at the prisoner store, and Plaintiff was permitted to have a sun hat as personal property. (*Id.* at PageID.218.)

On May 18, 2022, Plaintiff submitted another medical kite inquiring about the status of the chart review. Plaintiff was informed that a chart review had been sent to the medical provider. (*Id.* at PageID.218.) On May 19, 2022, N.P. Beck reviewed Plaintiff's chart and noted that Plaintiff had misunderstood the prior conversation regarding a hat, as he was now requesting a sun hat. N.P. Beck determined that Plaintiff could purchase an MDOC baseball hat from the store and keep it

2

with him as his personal property, but that a sun hat would not be requested and an ACMO request would not be submitted for him.[1] (*Id.* at PageID.223.)

On June 21, 2022, Plaintiff sent another medical kite requesting a sun hat. Nurse Allenbaugh responded to the kite stating, "No Medical Accommodation for hat. May purchase a hat. See attached Details." (*Id.* at PageID.229.) Nurse Allenbaugh provided Plaintiff his current accommodations. (*Id.* at PageID.230–31.) On June 24, 2022, Plaintiff sent a medical kite directed to the Health Unit Manager requesting that a new sun hat be issued for his past history of skin cancer. Plaintiff clarified that he was not asking for the accommodation to be renewed, but to be reissued based on the May 2018 order. Nurse Wease responded:

> The sun hat requires ACMO approval which the Dr. did have in 2018 but has to be renewed every year. You have no approval at this time but after speaking with the Dr. she has agreed to put in the request. If you receive approval we will call you out to give you a new hat.

(*Id.* at PageID.232.)

On June 25, 2022, Plaintiff submitted a medical kite complaining of a new spot on his scalp. Nurse Allenbaugh scheduled him for a nursing appointment. (*Id.* at PageID.233.) On June 27, 2022, non-Defendant Dr. Wuest entered a new special accommodations detail for Plaintiff that included, "Wide brimmed hat, ACMO approved indefinitely 6/27/2022." (*Id.* at PageID.234.) A subsequent notation indicates that the hat was dispensed to Plaintiff on July 15, 2022. (*Id.*)

On July 19, 2022, Plaintiff had a nursing visit related to the spot on his scalp. The nurse noted Plaintiff's history of skin cancer and that he had received a new hat for protection. On evaluation, the nurse noted a small lesion on the top of Plaintiff's head and another on his left shoulder. Plaintiff reported that neither lesion was painful, but they did itch when exposed to sun.

---

[1] Medical accommodations must be approved by the Assistant Chief Medical Officer (ACMO). (ECF No. 44-2 at PageID.334.)

(*Id.* at PageID.236–37.) The nurse referred Plaintiff to the provider for assessment. On July 21, 2022, Dr. Wuest saw Plaintiff regarding the lesions. The scalp lesion was noted as a small, 2-3mm flat scaly lesion consistent with pre-cancerous actinic keratosis. The shoulder lesion was described as an ovoid raised lesion. Dr. Wuest submitted a request for a dermatology consultation. (*Id.* at PageID.239–40.) That same day, Plaintiff had the shoulder lesion excised and biopsied. The results of the biopsy were returned on July 26, 2022, and revealed the shoulder lesion had been excised with clear margins of 1cm. (*Id.* at PageID.243–45.)

On August 16, 2022, Plaintiff had a follow-up with Dr. Wuest after the biopsy. Dr. Wuest noted that the dermatology consultation was "ATP'd", but she would resubmit the request based on the biopsy results. (*Id.* at PageID.256.). On August 23, 2022, Plaintiff had a punch biopsy on the scalp lesion, which revealed "advanced actinic keratosis." (*Id.* at PageID.259–62.)

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Generally, where the non-moving party fails to respond to a motion for summary judgment, "the district court must, at a minimum, examine the moving party's motion for summary judgment

4

to ensure that it has discharged its initial burden." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)).

### III. Discussion

Plaintiff's claims against Defendants Beck, Allenbaugh, and Wease arise under the Eighth Amendment, which prohibits cruel and unusual punishment. The prohibition applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The unnecessary and wanton infliction of pain encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must

5

"place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837 (1994). *Id.* at 837. In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005).

Plaintiff's claims fail on both components. Regarding the objective component, while the evidence shows that Plaintiff had a past skin cancer diagnosis, he had already been treated for that condition and was seeking a wide-brimmed hat to protect him from sun exposure. However, Plaintiff did not have a current ACMO accommodation for a sun hat. In her affidavit, Defendant N.P. Beck confirms that when she performed her April 19, 2022 chart review in response to Plaintiff's request, she confirmed that Plaintiff did not have a current special accommodation detail for any kind of a hat, but based on her review of his medical history, she gave approval for him to keep a baseball hat with him to address his concerns of sun exposure. (ECF No. 42-2 at PageID.293.) N.P. Beck states that when she conducted her subsequent chart review on May 19, 2022, there had been no intervening change in his condition and there were no recent medical evaluations that would support an accommodation for a sun hat. Thus, she clarified any confusion

6

from her prior determination that Plaintiff could purchase and keep a baseball hat and indicated that she would not be submitting an ACMO request based on her chart review. (*Id.*) Similarly, Nurse Allenbaugh states that on the one occasion she responded to Plaintiff's kite for a sun hat on June 22, 2022, she noted that Plaintiff did not have a current accommodation for a sun hat, and she advised Plaintiff that the medical provider had indicated that he could purchase a baseball hat and keep it as his property. (ECF No. 46-1 at PageID.377.) Finally, in her first interaction with Plaintiff on June 24, 2022, Nurse Wease responded to Plaintiff's kite by contacting the doctor, who agreed to seek an accommodation from the ACMO to provide Plaintiff a sunhat. (ECF No. 44-2 at PageID.334–35.) Approval for the hat was given on June 27, 2022, and the hat was then ordered. Nurse Wease dispensed the hat to Plaintiff on July 15, 2022. (*Id.* at PageID.335.) In all of these instances, Plaintiff received some form of treatment from Defendants.[2] Thus, Plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted). Because Plaintiff offers no evidence to establish this requirement, his claim must fail.[3]

Plaintiff also fails to satisfy the subjective component of the claim. As noted above, when confronted with Plaintiff's requests for a sun hat, each Defendant examined Plaintiff's chart and determined that Plaintiff did not have an active accommodation for a sun hat. Yet, N.P. Beck gave Plaintiff approval to purchase a baseball hat and keep it with his personal property. Nurse Allenbaugh confirmed N.P. Beck's prior determination and provided Plaintiff a list of his current accommodations. Last, Nurse Wease checked with Dr. Wuest and obtained her approval to submit

---

[2] As nurses, Allenbaugh and Wease were not authorized to submit accommodation requests to the ACMO. (ECF No. 44-2 at PageID.334.)

[3] Plaintiff has offered no medical expert to establish a connection between his lack of a sun hat from April through July 2022 and his July 22, 2022 lesions, and he admitted in his deposition that any such connection would be speculative. (ECF No. 42-3 at PageID.303.)

a request for accommodation for a sun hat. Her efforts resulted in the issuance of a new hat to Plaintiff less than three weeks later. None of these actions amount to deliberate indifference, as they fail to show that Defendants disregarded a serious risk of harm to Plaintiff.

## IV.   Conclusion

For the reasons set forth above, I recommend that the Court **GRANT** Defendants' motions for summary judgment (ECF Nos. 42 and 43) and dismiss Plaintiff's complaint with prejudice.

Dated: June 7, 2024                                                                  /s/ Sally J. Berens
                                                                                              SALLY J. BERENS
                                                                                              U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).